# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1427 | **DATE** | 8/11/2004 |
| **CASE TITLE** | Marseilles Hydro Power, LLC vs. Marseilles Land and Water Company, | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court finds that the Plaintiff is entitled to a preliminary injunction restraining Defendant and those in concert with it from opening the headgate of the north raceway to allow water to enter the raceway until trial of the case or further order of this court. The Court further orders that damages to Plaintiff be assessed at $15,000, and that punitive damages to Plaintiff be assessed at $5,000. Plaintiff and Field Container are ordered to resubmit their attorneys' fees and expenses requests by August 26, 2004. Defendant is to respond by September 2, 2004.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | number of notices | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | AUG 12 2004 | | |
| ✓ | Docketing to mail notices. | date docketed | | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | docketing deputy initials | | |
| WAP | courtroom deputy's initials | CLERK, U.S. DISTRICT COURT | date mailed notice | |
| | | 2004 AUG 12 AM 8: 27 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

MARSEILLES HYDRO POWER, LLC,

        Plaintiff,

    v.

MARSEILLES LAND AND WATER
COMPANY, et al.,

        Defendants.

AUG 1 1 2004

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

Case No. 04 C 1427

Hon. Harry D. Leinenweber

DOCKETED

AUG 1 2 2004

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

The Plaintiff Marseilles Hydro Power, LLC (hereinafter, "Plaintiff"), owns a disused hydroelectric plant located adjacent to the Illinois River in Marseilles, Illinois. The Defendant Marseilles Land and Water Company (hereinafter, "Defendant"), owns a canal, or raceway, that was used to power the hydroelectric plant. A contract between the parties' predecessors required the Plaintiff to pay rent and the Defendant to keep the raceway in good repair. This suit was brought to require Defendant to put the raceway in good repair. The Defendant counterclaimed for past rent due. The court entered summary judgment against Defendant on both the claim and counterclaim on the grounds that the repair requirement trumped the rent requirement. The Plaintiff has also filed a suit to condemn the raceway which is currently set for trial in the fall of this year.

On June 25, 2004, Defendant notified Plaintiff that the following day (June 26) it intended to open the headgate of the

raceway to allow water to flow through the raceway to prove that the raceway was operational in its present condition. Plaintiff sought an emergency hearing to seek a Temporary Restraining Order (a "TRO") preventing the conduct of the test. A hearing was held before Judge William J. Hibbler, the emergency judge, during the afternoon of June 25, 2004. Judge Hibbler issued a TRO prohibiting the conducting of the test described in Defendant's notice to Plaintiff. Nevertheless, the following day Defendant proceeded to open the headgate which allowed a large volume of water at a high velocity to be released through the raceway. Plaintiff and a neighboring landowner, Field Container Company (hereinafter, "Field Container"), claim that the release of water violated the TRO and caused significant damage to their respective properties. Plaintiff and Field Container sought to have Defendant held in contempt of court.

At the contempt hearing, this court reviewed the transcript of the hearing before Judge Hibbler and determined that, although Defendant did not conduct the test that was the stated reason for releasing the water into the raceway, the clear intent of Judge Hibbler in issuing the TRO was to prevent the release of water into the raceway due to Plaintiff's fear that water, not the test, would cause damage to its property. Accordingly, the court found Defendant, and its president, Lee W. Mueller, guilty of contempt of court. The matter was then set for further hearing on Plaintiff's request for the issuance of preliminary injunction against a future release of water, and its request for compensation for the damages it

sustained, its attorney's fees, and for punitive damages.   On August 5, 2004, the court heard evidence, including expert testimony, on the two issues.

## II. **MOTION FOR PRELIMINARY INJUNCTION**

To obtain a preliminary injunction a movant must show that (1) it has a likelihood of success on the merits, (2) no adequate remedy at law exists, (3) and it will suffer irreparable harm if the injunction is not granted.   If these conditions are met, the court must then balance the harm to the movant compared to harm to the person sought to be enjoined.   This involves a sliding scale analysis, i.e., the greater the chance of success on the merits the weaker the showing it need make on the balance of harms.   Foodcomm International v. Barry, 328 F.3d 300, 303 (7th Cir. 2003).

The Defendant contests the right to the preliminary injunction on two grounds, a lack of proof of irreparable harm and on the balance of hardships.   Irreparable harm can result from there being no adequate remedy at law.   While at first glance it would appear that there is an adequate remedy at law because, if Defendant opens the headgate again, Plaintiff can sue for damages if it sustains injury to its property.   However, where actual damage is difficult to calculate, for example if it is speculative, there may be no adequate remedy at law.   In addition, impecuniousness of a defendant may make a legal remedy inadequate.   Plaintiff alleges, and Defendant did not deny, that damages may be difficult to collect.   Thus, the balance of harms is of great importance in determining whether the injunction

- 3 -

should be issued.    Id. p. 304.    In this case the court heard competing expert witnesses and the evidence was very contested as to how much damage, if any, was actually caused by the release of water. In fact Defendant vigorously contended that damage to the wall of the raceway was highly speculative.

The alleged need to conduct the test and release the water was initially asserted by Defendant's lawyers to be necessary to prove that this court was wrong when it granted summary judgment to Plaintiff due to failure to keep the raceway in good repair.    An additional reason for conducting the test was presented at the preliminary injunction hearing:    that the capacity of the raceway needed to be determined to assess its fair market value for the condemnation case.    The first reason for conducting the test is however foreclosed by Defendant's failure to contest the statement that "North Head Race could not be used to transport water for the purpose of generating electricity at the hydroelectric plant," set forth in Plaintiff's Rule LR56.1(b) statement of uncontested facts. Consequently, conducting a test to prove otherwise is too late and is akin to locking the barn after the horse is stolen.    In regard to Defendant's second argument that it is necessary to conduct the test to determine value for the condemnation case, Plaintiff contends that the test is unnecessary because the value of the raceway must be based on a non-water power use of the land.    It cites United States v. Reynolds, 90 S.Ct. 803 (1970).    However, it misconstrues the holding of Reynolds.    This case stands for the proposition that a

condemnee is not entitled to an increase in value of its property based solely on the prospective use of the property by the condemnor. United States v. Toronto, Hamilton & Buffalo Navigation Co., 70 S.Ct. 217, 214 (1949). Rather the law is that Defendant is entitled to fair market value of its property at its highest and best use. Normally this is ascertainable through the market approach, i.e., based on comparable sales of similar property in reasonable proximity to the subject property geographically and in time. Here the highest and best use may well be as a raceway. If there are few if any comparable sales other factors can certainly be considered such as earnings, costs of repair to make operational and the like. Thus, the capacity of the raceway could be relevant to its evaluation. However, both experts testified that the capacity of the raceway can be calculated without running water through the raceway. Defendant's expert did testify that a test conducted under actual conditions would give a more precise result, but he admitted that the plant being non-operational at the current time would affect the result also making it less precise. The Defendant has conceded the lack of capacity of the raceway without repairs. Thus capacity of the raceway after repairs are made would be the relevant inquiry with regard to value. Therefore, the inability to conduct a test at this time would cause minimal harm to Defendant.

Consequently, the harm to Defendant by the entry of a preliminary injunction would be minimal, while the harm to Plaintiff is extremely difficult to determine but could be great.

Accordingly, the court finds that the Plaintiff is entitled to a preliminary injunction restraining Defendant and those in concert with it from opening the headgate of the north raceway to allow water to enter the raceway until trial of the case or further order of the court.

### III. **DAMAGES**

The court heard extensive testimony on whether the Defendant sustained damages as a result of the release of water in violation of the TRO.    Initially Defendant contends that the court cannot award compensatory damages as a result of the violation, and to recover them a Plaintiff must file a separate suit.    However the power to punish contempt is not so limited.    See, National Organization for Women v. Operation Rescue, 37 F.3d 646, 662 (D.C. Cir. 1994).    The burden of proof is however .on the party asserting the damages.    Id. In this case Plaintiff claims that it suffered actual damages in the following areas:    damaged trash racks, destruction of an earthen ramp, accumulation of debris in the power house, the need to reseal the water side of the headgate, and the need to pump the water and debris out of the forebay area.    The Defendant's expert took issue with each of these items of alleged damage.    Field Containers's expert testified that due to the release of the water an area of the wall that had not yet collapsed could well do so now at any time.    He testified that rip rap and wall anchors could be utilized to lessen the possibility of collapse.

The Plaintiff asks for $50,000 to repair the side racks, $17,500 to repair the earthen ramp, $5,000 to reseal the headgate, $15,000 to $17,000 to pump and clean out the forebay, and $2,500 to $3,500 to clean out the turbine pits. Plaintiff also asks for $27,592.55 for attorneys' fees and costs, and $24,555 paid to its employees in preparing for these proceedings. Plaintiff also seeks an award of punitive damages. Field Container seeks fees and costs of $20,166.30.

Defendant responds that its evidence shows the side racks to be worthless, that there was no damage to the earthen ramp, that because the open turbine pits and the spillway were subject to repeated backwaters invasions from the Illinois river, substantial amounts of debris were already present in these areas, and there was no evidence to prove that the debris currently in the forebay and power house was deposited by the watering of the canal on June 26, 2004. Defendant also contends that the raceway is currently and was at the time of the watering subject to substantial leakage from an equalizer gate so that whatever leakage comes from the lack of seal of the headgate is rendered immaterial.

The court is certain that the violation of the TRO caused some damage to Plaintiff's and Field Container's property although the court does not believe that the damage was anywhere near the extent that Plaintiff and Field Container claim. With regard to the sidetrack, the pictures before and after show that they did suffer damage as a result of the violation, but the side racks were so

corroded and damaged before that they will have to be replaced in any event. Both the report prepared by North American Hydro and the project description in the environmental assessment of the Federal Energy Regulatory Commission state that the side racks are to be replaced. Therefore, the court awards no damages for the side racks.

The photographic evidence of the earthen ramp appears to show minimal erosion. Most of the ramp is covered in weeds and shows no before and after change. There may well be some loss located below water level. Therefore, the court will allow $5,000 to repair the ramp. Likewise the court will allow $5,000 to reseal the headgate. The fact that there may be additional leakage from the equalizer gate does not change the fact that the headgate was sealed under agreement with Defendant. There is likewise no question that debris was deposited into the forebay area and into the powerhouse and turbine pits. The court finds that the reasonable cost to clean out debris from these two areas is $5,000.

With regard to attorneys' fees and employee costs for preparing for the hearings, the court will only allow those costs associated with the bringing the contempt proceeding and presenting the assessment of damages. It was not inherently wrong for Defendant to attempt to conduct a water test with respect to its raceway. It was, of course, within Plaintiff's rights to attempt to stop the test from being conducted. Judge Hibbler issued a TRO prohibiting the release of water until this court had a chance to consider the matter. Although the Defendant had no right to ignore Judge Hibbler's TRO, it

did have a right to oppose extending the TRO and the issuance of a preliminary injunction. Therefore the time and expenses incurred in enforcing the TRO and presenting claims for damages are compensable in this proceeding but preparing and presenting the motion for the TRO and a preliminary injunction is not compensable. The court has parsed the fee and expense requests made by Plaintiff and Field Container but is unable to determine the amount of time and expenses necessarily spent in enforcement as opposed to obtaining the TRO and the preliminary injunction. The Defendant suggests and the court agrees that Plaintiff and Field Container should withdraw the present requests for fees and expenses and resubmit them with detailed descriptions of the work performed in accordance with this order.

Plaintiff also requests that this court assess punitive damages against Defendant. The purpose of punitive damages is to punish and deter. The actions of Defendant were brazen. There was no excuse for releasing the water the day following the entry of the TRO and at most two days before the parties could have appeared before this court for a reassessment. However, the financial condition of the Contemner is relevant in assessing punitive damages. Plaintiff has asserted that Defendant is impecunious. Therefore, the court will take that into account. Accordingly the court assesses the sum of $5,000 as punitive damages.

### IV. CONCLUSION

For the reasons stated herein, the Court finds that the Plaintiff is entitled to a preliminary injunction restraining

Defendant and those in concert with it from opening the headgate of the north raceway to allow water to enter the raceway until trial of the case or further order of this court.

The Court further orders that damages to Plaintiff be assessed at $15,000, and that punitive damages to Plaintiff be assessed at $5,000. Plaintiff and Field Container are ordered to resubmit their attorneys' fees and expense requests with 14 days. Defendant is to respond within 7 days.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: _August 11, 2004_